591 So.2d 1178 (1991)
STATE of Louisiana
v.
Eric BARCLAY.
No. 90 KA 0456.
Court of Appeal of Louisiana, First Circuit.
November 22, 1991.
Writ Denied April 3, 1992.
*1179 Benjamin Vega, Donaldsonville, for defendant/ appellant Eric Barclay.
Larry Buquoi, Asst. Dist. Atty., Gonzales, for plaintiff/appellee State of La.
Before COVINGTON, C.J., and LOTTINGER, EDWARDS, WATKINS, SHORTESS, CARTER, SAVOIE, LANIER, CRAIN, LeBLANC, FOIL, and GONZALES, JJ.
LOTTINGER, Judge.
Eric Barclay (defendant) was charged by grand jury indictment with aggravated rape. La.R.S. 14:42. Defendant pleaded not guilty to the original charge. However, in accordance with a plea bargain, he withdrew his plea of not guilty and pleaded guilty to conspiracy to commit aggravated rape. La.R.S. 14:26 and 14:42. The record reflects that, pursuant to the plea bargain, the state agreed to dismiss all other criminal charges then pending against defendant, including a separate indictment (under docket number 1213 of the district court) charging defendant with the first degree murder of the aggravated rape victim. The trial court sentenced defendant to imprisonment at hard labor for a term of thirty years. Pursuant to an out-of-time appeal (bearing docket no. KA 88 0900 of this court) defendant appealed urging in a single assignment of error that his sentence is excessive. In an unpublished opinion in State v. Barclay, 542 So.2d 1178 (La.App. 1st Cir.1989), because of error patent on the face of the record, we pretermitted consideration of defendant's assignment of error and remanded the case for further proceedings.

PATENT ERROR
In noting the error patent and ordering this remand, we stated the following:
It appears that the original indictment has been lost or mislaid. In the present case, the record does not reflect when the original indictment was lost or when the loss was discovered. However, the trial court retains authority to replace the lost and/or mislaid indictment with a copy. See La.R.S. 15:272.
Accordingly, we remand this matter to the district court. A contradictory hearing should be held to determine the status of the original indictment. Upon proof of loss, destruction, or abstraction of the original indictment, the trial court must then determine whether or not a true and correct copy of the original indictment is available for substitution. If such a copy is located, the trial court should re-establish the record by ordering that the copy be substituted for the original.
In the event that the trial court is unable to reestablish the record by compliance with La.R.S. 15:272, a contradictory and evidentiary hearing should be conducted, directed toward reconstructing the original indictment in a manner satisfactory to the trial court.
In addition, because defendant was allowed to plead guilty to a crime nonresponsive *1180 to the original charge[1] on remand, the state must also demonstrate that the original indictment was amended in writing. See State v. Breaux, 504 So.2d 1011 (La.App. 1st Cir.1987).
Because we have not completed our review of other contentions raised by this appeal, we will retain jurisdiction. After the trial court has made determinations on these matters and caused appropriate supplementation of the appellate record, it should cause the record to be lodged anew with this court within fifteen days of its decision.
Footnote 1. La.R.S. 14:16A provides, in pertinent part:
If the intended basic crime has been consummated, the conspirators may be tried for either the conspiracy or the completed offense, and a conviction for one shall not bar prosecution for the other.
Pursuant to this court's April 11, 1989 opinion, an evidentiary hearing was held before the trial court on May 11, 1989; and, subsequently, the record was lodged anew with this court (under our docket no. 555 So.2d 676). In another unpublished opinion, State v. Barclay, 555 So.2d 676 (La. App. 1st Cir.1989), we remanded this matter for a new evidentiary hearing on the basis that defendant had not been represented by counsel at the May 11, 1989 evidentiary hearing.[1]
Following this second remand (in accordance with our two prior decisions in this case), a second evidentiary hearing was held before the trial court on February 20, 1990; and the appellate record was supplemented. The present appeal followed.
At the second evidentiary hearing, the state presented the testimony of Hart Bourque (clerk of court of Ascension Parish), Melodie Christy (deputy clerk of court of Ascension Parish), Ascension Parish Deputy Sheriff Roger Morris, attorney Aubert Talbot (who in 1983 was district attorney in the Twenty-Third Judicial District and was in charge of the instant prosecution) and attorney Alan Robert (who in 1983 served as defense counsel for defendant in this case). The state also introduced into evidence state exhibit two, an uncertified copy of the indictment bearing district court docket number 1214, charging defendant with the aggravated rape.
Clerk of Court Hart Bourque testified that he had reviewed the record in this case and that it did not include the original indictment. For about eighteen months, his office conducted a search for the indictment but was unable to locate it.
Deputy Morris testified that he works in the criminal records department of the Ascension Parish Sheriff's Office. In that employment capacity, he processes documents for the Department of Corrections following a defendant's criminal conviction. His duties include making photocopies of bills of information, indictments and court minutes pertaining to criminal convictions. He makes the photocopies from the original court folder (file) in the clerk of court's office. In regard to State v. Barclay bearing district court docket number 1214, he followed the procedure referred to above.
Deputy Morris identified state exhibit two as a copy of the indictment which he made from the records of the clerk of court pertaining to the instant case. Although he felt that state exhibit two had been made from the original indictment, he could not testify that he was sure it was a copy of the original document. Nonetheless, Morris stated that state exhibit two was a "true copy" that had remained in his possession from the time he made the photocopy; *1181 and, to his knowledge, the photocopy had not been altered or changed in any way.
Aubert Talbot testified that his acceptance of defendant's guilty plea to the lesser charge of conspiracy to commit aggravated rape was tantamount to an amendment of the indictment, but he indicated that he did not recall ever changing the indictment in writing to reflect the reduced criminal charge. Alan Robert stated that he had never seen a written amendment to the indictment; and, to his knowledge, no written amendment was made. Similarly, Melodie Christy indicated during her testimony that she rearraigned defendant on the reduced charge pursuant to Talbot's oral instructions relative to the new charge; and, to her knowledge, there was no written amendment to the indictment.
We find that state exhibit two, the uncertified copy of the indictment, does not comply with the requisites of La.R.S. 15:272 authorizing the reestablishment of the record by substitution of a certified copy of a lost, destroyed, or abstracted indictment for the lost, destroyed, or abstracted document. Nonetheless, we find that state exhibit two, together with the testimonial evidence introduced at the second evidentiary hearing, sufficiently reconstructed the original indictment in accordance with this court's instructions to the trial court on remand of this matter in State v. Barclay, 542 So.2d 1178.
Consistent with the testimony of Talbot, Robert, and Christy indicating that the indictment charging the aggravated rape was not amended in writing, state exhibit two reflects no written amendment setting forth the reduced charge of conspiracy to commit aggravated rape. Hence, the first issue to be addressed by this court is whether or not the failure of the state to amend the indictment in writing is a fatal defect, since the charge to which defendant pleaded (conspiracy to commit aggravated rape) is neither a lesser included offense of nor responsive to the indicted charge of aggravated rape.[2] This issue is properly before this court pursuant to La.Code Crim.P. art. 920(2), which authorizes our review of the record for error patent. See State v. Breaux, 504 So.2d 1011 (La.App. 1st Cir.1987).

HARMLESS ERROR
We conclude that the failure to formally amend is at most harmless error.
Well before the Louisiana Supreme Court discussed harmless error in State v. Tommy Cage, 583 So.2d 1125 (La.1991), the supreme court essentially considered the harmless error concept in State v. James, 305 So.2d 514 (La.1974).
In James, the defendant was charged by bill of information[3] with armed robbery of the Pioneer Natural Gas Company. In its patent error check the court noticed an issue concerning the validity of the indictment because armed robbery is a crime committed by violence against a person. An essential element of the crime is that one or more individuals be the victim. The naming of a building or a corporation as the victim of armed robbery made the indictment defective.
In writing for the court Justice Tate held:
Under our prior jurisprudence, this indictment is fatally defective.
. . . . .

*1182 Under the decisions cited and the jurisprudence upon which it relies, a fatal defect in an indictment must be noticed by a court, even after conviction and even where no objection to the sufficiency of the indictment had ever been raised. In such circumstances, where a fatal defect is noticed even after conviction, the entire prosecution must be dismissed, since founded upon a defective indictment and since the foundation of a criminal prosecution is a valid indictment.
We have re-examined the constitutional resources relied upon for this stringent doctrine. We do not find their fundamental purpose of protecting an accused against state abuse is served by such an over technical construction.
We now conclude that, ..., where in fact an accused has been fairly informed of the charge against him by the indictment and has not been prejudiced by surprise or lack of notice, the technical sufficiency of the indictment may not be questioned after conviction where, as here, no objection was raised to it prior to the verdict and where, without unfairness, the accused may be protected against further prosecution for any offense or offenses charged by it through examination of the pleadings and the evidence in the instant prosecution.
305 So.2d at 516-517.
The error in the case sub judice does not fall squarely within the framework of that laid out by the supreme court in State v. Tommy Cage, supra. However, we are convinced that where as in the case sub judice the defendant enters a plea of guilty to a crime nonresponsive to the original indictment when such plea is acceptable to the district attorney, the defendant is fully aware of the charge to which he has pleaded as shown by extensive Boykinization, and the plea is not prejudicial to the defendant, any error caused by a failure to formally amend the indictment is harmless.

EXCESSIVE SENTENCE
Having found no reversible error patent, we now turn to a discussion of defendant's sole assignment of error, i.e., that the sentence imposed is excessive. For reasons set forth hereinafter, we find no merit in the assigned error.
The facts set forth herein are derived from the presentence investigation report, which includes statements made to the police by defendant and his co-conspirator, hospital records, and arrest reports. The instant offense occurred during the early morning hours of January 23, 1983. Defendant and his co-conspirator, Jeff Lively, broke into the home of the ninety-two year old, crippled victim and found her asleep on her bed. Defendant held the victim down while Lively attempted to rape her. After about ten to fifteen minutes, defendant left the scene. Lively remained, still attempting to rape the victim. Lively later reported to a local priest that the victim was hurt, and the priest summoned the police.
The victim was transported to the hospital. She had been severely beaten and suffered abrasions, extensive bruising, and multiple broken ribs. According to the medical report, the victim apparently had been beaten, kicked, strangled, and possibly raped. She died as a result of her injuries. Lively subsequently was convicted of the victim's murder and sentenced to life imprisonment.
Defendant originally was indicted for first degree murder and aggravated rape in separate indictments. Pursuant to a plea bargain agreement, he pleaded guilty to conspiracy to commit aggravated rape under the indictment charging him with aggravated rape. In addition to the reduction in that charge, all other related charges against defendant, including the indictment for first degree murder, were nolle prosequied by the district attorney. Defendant was sentenced to the maximum penalty for conspiracy to commit aggravated rape, i.e., thirty years at hard labor. See La.R.S. 14:26(B) and 14:42(C). He now complains that the sentence is excessive in view of his age, lack of prior adult record, and the circumstances of the case.
Defendant was seventeen years old when he committed the instant offense. He had no prior adult convictions and only minor infractions as a juvenile for theft and disturbing *1183 the peace. He received his high school diploma through adult education classes.
Article I, § 20 of the Louisiana Constitution prohibits the imposition by law of excessive punishment. Furthermore, the jurisprudence reflects that a sentence may violate a defendant's constitutional right against excessive punishment although the sentence is within statutory limits. However, the district court has wide discretion in the imposition of sentences; and a sentence within statutory limits will not be set aside in the absence of an abuse of discretion. State v. Tuggle, 509 So.2d 118, 121 (La.App. 1st Cir.1987).
Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than a needless imposition of pain and suffering. A sentence is considered grossly disproportionate if one's sense of justice is shocked when comparing the punishment in light of the harm down to society. State v. Tuggle, 509 So.2d at 121. In making this determination, we must also be mindful of the general principle that maximum sentences may be imposed only in cases involving the most serious offenses and the worst offenders. State v. Butters, 527 So.2d 1023, 1029 (La.1988). However, we must consider the effect of a highly advantageous plea bargain which drastically reduces the overall penalty exposure. See State v. Lanclos, 419 So.2d 475, 478 (La. 1982); State v. Tuggle, 509 So.2d at 122.
The district court advanced extensive reasons for sentencing in full compliance with La.Code Crim.P. art. 894.1. Despite defendant's age and first offender classification, the district court imposed the maximum sentence, noting that defendant's first venture into adult crime was of major proportions. This offense involved an unprovoked attack upon an elderly invalid, during which time she was brutally beaten and sexually assaulted (if not actually raped), resulting in her death.
The fact that defendant's active participation in the crime may have been of short duration (ten to fifteen minutes) does not detract from the shocking nature of the offense. Also of note is the failure of defendant to dissuade Lively, his co-conspirator, from the attack when defendant decided to leave the scene and his failure to seek help for the victim after he departed. Rather, he left her to the abusive actions of Lively. In fact, it was Lively, the man later convicted of the victim's murder, who sought aid for the victim.
After a thorough examination of the record herein, the presentence investigation, and the district court's extensive reasons for sentencing, we cannot find that the district court abused its discretion in sentencing defendant to the maximum penalty of thirty years at hard labor. This crime was heinous, and the penalty imposed for this crime upon this particular defendant certainly does not shock one's sense of justice. Accordingly, we find no merit in defendant's assigned error and affirm the conviction and sentence.
CONVICTION AND SENTENCE AFFIRMED.
SHORTESS and LANIER, JJ., dissent and will assign reasons.
SAVOIE, J., dissents for the reasons assigned by SHORTESS, J.
SHORTESS, LANIER, and SAVOIE, JJ., dissenting.
The majority, in straining to find "harmless error," has overlooked the following law and jurisprudence: LSA-Const. Art. I, § 13; La.C.Cr.P. arts. 383, 487, 558, 814, 815; State v. Buttner, 411 So.2d 35 (La. 1982); State v. Book, 372 So.2d 1202 (La. 1979); State v. Parrish, 272 So.2d 321 (La. 1973); State v. Kirkendoll, 559 So.2d 555 (La.App.2d Cir.1990); State v. Marceaux, 542 So.2d 1121 (La.App. 5th Cir.1989); State v. Gooden, 523 So.2d 283 (La.App.2d Cir.), writ denied, 530 So.2d 570 (La.1988); State v. James, 517 So.2d 291 (La.App. 1st Cir.1987); State v. Breaux, 504 So.2d 1011 (La.App. 1st Cir.1987); State v. Price, 461 So.2d 503 (La.App. 3d Cir.1984). See State In Interest of Newton, 559 So.2d 801 (La. App. 1st Cir.1990).
We believe, as a practical matter, however, that this defendant was not actually *1184 prejudiced by the failure of the state, pursuant to its plea bargain agreement with the defendant, to file a written amendment to the indictment. In fact, the defendant, who faced the more serious charge of aggravated rape for which the penalty was mandatory life imprisonment, was permitted to plead to the lesser offense of conspiracy to commit aggravated rape for which the maximum sentence was thirty years. In addition, the state agreed to dismiss all other charges against the defendant, including a separate indictment by which the defendant had been charged with first degree murder.
Despite the clear and uncontroverted fact that the defendant knowingly, voluntarily, and with the advice and consent of his attorney pleaded to a lesser, though not responsive offense, his voluntary guilty plea cannot stand under the law as it currently exists because of the state's failure to put into writing an amendment orally espoused in open court.
We, as an intermediate court and pursuant to our constitutional duty, must apply the laws of this state as promulgated by the Louisiana Legislature and interpreted by the Louisiana Supreme Court. We cannot overrule Louisiana Supreme Court cases or interpret statutory and codal provisions contrary to the intention of the legislature or the interpretation given those provisions by our supreme court. In essence, intermediate appellate courts may philosophically disagree with specific laws and their interpretations, but cannot legally disregard any provisions enacted by the legislature or interpret those laws in a manner inconsistent with the interpretation given them by the supreme court.
The remedy to the grave situation raised by the facts of this case, perhaps, lies with the legislature's enactment of new laws permitting oral amendments to indictments or bills of information when amended in open court and acquiesced in by the defendant upon advice and with the assistance of legal counsel. Another avenue may be in the Louisiana Supreme Court's reconsideration of its position in State v. Cook, 372 So.2d 1202 (La.1979) and State v. Parrish, 272 So.2d 321 (La.1973). Until either of those remedies becomes a reality, we are constrained by the above-cited law to say that this defendant's conviction should be reversed and remanded to the district for further proceedings. For these reasons, we respectfully dissent from the majority opinion of this court.
We respectfully dissent.
NOTES
[1] In ordering the remand, we noted the following facts and circumstances. In a pro se filing with this court, defendant complained of the absence of counsel at the May 11, 1989, evidentiary hearing. The record reflected that defendant was not represented by counsel at the hearing. He refused to cross-examine the state's witnesses and to testify himself. Instead, he informed the court that he had no attorney and knew nothing of the law. No attempt was made to determine why defendant's previously retained counsel was not present. No attempt was made to ascertain the appropriateness of appointing counsel for defendant. Taking cognizance that the importance of the hearing was beyond dispute and that La. Const. Art. I, § 13 guarantees the right to counsel at each stage of criminal proceedings, we concluded that we had no choice but to remand this matter for a new hearing.
[2] Clearly, conspiracy to commit aggravated rape contains additional elements not included in the definition of aggravated rape; and, accordingly, it is not a lesser and included offense of aggravated rape. See In Interest of Rodrigues, 532 So.2d 481, 483 (La.App. 1st Cir.1988). Additionally, the law in effect and applicable to the instant aggravated rape charge, La.Code Crim.P. art. 814(A)(8) (as amended by Act 763 of 1982), provided that the only responsive verdicts for aggravated rape were:

Guilty.
Guilty of attempted aggravated rape.
Guilty of forcible rape.
Guilty of attempted forcible rape.
Guilty of sexual battery.
Not guilty.
[3] In the James opinion, the supreme court uses the term "indictment" in the generic sense to include either indictment or bill of information. Thus, even though the defendant James was charged by bill of information, everything the supreme court says is applicable to both indictments and bills of information.